# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Bricklayers and Allied Craftworkers
Service Corporation, a Minnesota
nonprofit corporation,

      Plaintiff,

    v.

Archithority United L.L.C., a Minnesota
Limited Liability Company, and Elena F.
Kotowski, individually,

      Defendants.

Case No. 19-cv-2588 (MJD/ECW)

**REPORT AND RECOMMENDATION**

This case is before the Court on Plaintiff Bricklayers and Allied Craftworkers Service Corporation's ("Bricklayers" or "Plaintiff") Motion for Finding of Civil Contempt ("Motion for Contempt") (Dkt. 24) against Defendants Archithority United, L.L.C. ("Archithority") and Elena F. Kotowski (collectively, "Defendants") and Defendant Archithority United L.L.C..'s Motion for Extension of Time to Comply with the Court's February 20, 2020 Order (Dkt. 45) ("Motion for Extension"). The Motions have been referred to the undersigned United States Magistrate Judge for a report and recommendation by Senior U.S. District Judge Michael J. Davis pursuant to 28 U.S.C. § 636. (Dkts. 33, 53.) For the reasons discussed below, the Court recommends granting the Motion for Contempt and denying the Motion for Extension.[1]

---

[1]     The Court determines that a hearing on the Motion for Extension is not necessary. The Court held a hearing on the Motion for Contempt on September 3, 2020 at which all

# I.    **BACKGROUND**

Bricklayers filed this action on September 25, 2019.  (Dkt. 1.)  Bricklayers sought "to compel a payroll audit, compel compliance with fringe benefit reporting requirements and to collect any unpaid fringe benefit contributions shown to be due," pursuant to the Employment Retirement Income Security Act of 1974 ("ERISA").  (*Id.* ¶ 1.)  Archithority was served with the summons and complaint on November 1, 2019 (Dkt. 4), but Kotowski was not and has not been served.

Archithority did not respond to the Complaint, and on December 26, 2019, the Clerk of Court entered default against Archithority.  (Dkt. 7.)  Bricklayers then moved for default judgment (Dkt. 9), and Judge Davis granted the motion at the February 18, 2020 hearing and issued Findings of Fact, Conclusions of Law, and an Order for Judgment on February 20, 2020 ("the February 20 Order") (Dkts. 20, 22).  The relevant portions of the February 20 Order are set forth below:

> 2.    That within 30 days of the date of this Order, Archithority United, LLC ("Archithority"), by and through its owner Elena F. Kotowski, is ordered and directed to furnish Zenith American Solutions, Inc., the Plaintiff's Third Party Administrator, all necessary employment and payroll records for a fringe benefit audit, and to cooperate fully with the fringe benefit audit.
>
> 3.    That Defendant Archithority is ordered to post with Plaintiff's Third Party Administrator a $50,000.00 or $100,000.00 surety bond, depending on the number of collectively bargained employees Archithority employs.

---

parties were represented by counsel.  (Dkt. 41.)  Having reviewed Archithority's written submissions in support of its Motion for Extension, the Court concludes that they are duplicative of the arguments made in opposition to the Motion for Contempt, and therefore cancels the hearing scheduled for November 13, 2020.

. . .

6.      That upon completion of the fringe benefit audit as ordered herein, Plaintiff shall forthwith serve and file an Affidavit of the fringe benefit auditor setting forth the amount of the unpaid contributions Defendant Archithority owe Plaintiff through the date of the audit, liquidated damages owing, and interest on the unpaid contributions, and an Affidavit of Plaintiff's counsel setting forth the amount of the reasonable attorney fees and costs incurred since the date of this order. . . .

7.      That Plaintiff's counsel shall forthwith mail a copy of this Order to Defendant Archithority at its last known address by both first-class mail and certified mail, return receipt requested, which shall constitute due and proper service of this Order.

(Dkt. 22 at 14-16.)[2]  The Court also granted judgment in favor of Bricklayers for various

monetary damages based on the unpaid fringe benefit contributions determined to be

owed in the audit, as well as judgment for reasonable attorneys' fees and costs

incurred, including the cost of conducting the audit, and an award of fees and costs

incurred to date.  (*Id.* at 14-15.)  Bricklayers served the February 20 Order on

Archithority by certified and first-class mail on February 21, 2020.  (Dkt. 23.)

Defendants did not respond to or comply with the terms of the February 20 Order

by furnishing the records for and cooperating with the audit within the required 30 days.

(*See* Dkt. 27 ¶¶ 3-4; Dkt. 22 at 14.)  On July 8, 2020—long after the 30 days had

expired—Bricklayers filed the Motion for Contempt and supporting memorandum of

law, affidavit, and exhibits, with the hearing date to be determined.  (Dkts. 24-27, 27-1.)

On July 13, 2020, Kotowski filed a document purporting to seek a 90-day continuance of

---

[2]      Unless otherwise noted, all page numbers refer to the CM/ECF pagination.

the hearing, which still had not been set.[3]  (Dkt. 30.)  On July 16, 2020, Judge Davis

referred the Motion for Contempt to the undersigned, and on July 23, 2020, the hearing

was set for September 3, 2020.  (Dkts. 33, 34.)

After Bricklayers served the February 20 Order on Defendants, beginning in April

2020 and continuing through the September 3 hearing, the parties communicated about

this action.  In particular, on April 14, 2020, an attorney representing Defendants emailed

Bricklayers' counsel and asked what documents were needed, stating that Kotowski's

"intent is to resolve this and if payments were not made to make them."  (Dkt. 27-1, Ex.

A at 1.)  Bricklayers' counsel responded on April 17, 2020 in two emails.  (*Id.*, Ex. B at

2, Ex. C at 3.)  The first email included the February 20 Order as an attachment and

described counsel's view of owed payments, missing information, the audit process, and

the lateness of Defendants' response in view of the February 20 Order, noting, "I will

hold off pursuing contempt for a short time if we get prompt and complete cooperation

from Ms. Kotowski in the audit process and otherwise."  (*Id.*, Ex. C at 3.)  The second

email, sent about 40 minutes later, included the list of documents and information needed

for the audit, suggested that Kotowski and the auditor at the Third-Party Administrator

---

[3]     Kotowski is not an attorney, and it is well-established that a corporate entity—
here, Archithority—may not proceed pro se in this District.  *See Akra Direct Mktg. Corp.
v. Fingerhut Corp.*, 86 F.3d 852, 857 (8th Cir. 1996) ("[T]he law does not allow a
corporation to proceed *pro se*.").  In any event, on July 23, 2020, after Judge Davis
referred the Motion for Contempt to the undersigned, the Court set the hearing for
September 3, 2020.  (Dkts. 33, 34.)  Defendants did not seek an additional continuance of
the hearing, and the Court therefore denied the request as moot after the September 3
hearing.  (Dkt. 41.)

communicate directly, and provided the auditor's contact information. (*Id.*, Ex. B at 2.) Defendants' counsel responded the same day and said the information would be sent to Kotowski. (*Id.*, Ex. D at 4.)

On May 11, 2020, Bricklayers' counsel informed Defendants' counsel via email that the auditor had not received anything from Kotowski and asked counsel to ask Kotowski to respond to the auditor. (*Id.*, Ex. E at 5.) Defendants' counsel responded on May 17, 2020 that his firm no longer represented Defendants. (*Id.*, Ex. F at 6.) Bricklayers' counsel asked for contact information for Kotowski on May 18, 2020 (*id.*, Ex. G at 7), but Defendants' now-former counsel did not respond, and a later email to Kotowski seeking her address also elicited no response (Dkt. 27 ¶ 7).

Meanwhile, on May 13, 2020, Bricklayers' counsel was informed that Kotowski had contacted the Third-Party Administrator, though not the auditor, and requested that Archithority be "deactivated" such that it would not need to submit monthly contribution reports, which Bricklayers maintains Archithority is still obligated to provide. (*Id.* ¶ 8.)

On May 27, 2020, having found an email address for Kotowski, Bricklayers' counsel emailed her and stated that if she failed to comply with the February 20 Order by June 5, 2020, Bricklayers intended to pursue a motion for a finding of contempt and order of sanctions. (*Id.* ¶ 9; Dkt. 27-1, Ex. H at 8.) Counsel also again provided the list of documents and information needed and the auditor's contact information. (Dkt. 27-1, Ex. H at 8.) Kotowski responded that same day, saying that she would like to work with counsel to resolve the issue and asking if he could speak with her the following day. (*Id.*,

Ex. I at 10.)  Bricklayers' counsel said that they could speak and that Kotowski should

contact the auditor and provide the documents.  (*Id.*, Ex. J at 11.)

Kotowski emailed the auditor, Lora Lessard, on Friday, May 29, 2020, stating that

she was "working on getting [the auditor] the documents you need and will have them to

you on Monday afternoon."  (*Id.*, Ex. K at 12.)  Kotowski asked the auditor to confirm

the documents needed and provided a list that was identical to the list Bricklayers'

counsel emailed to Kotowski on May 27, 2020.  (*Id.*; *see id.*, Ex. H at 8.)  On the

following Monday, however, Kotowski emailed the auditor and said that while she had

thought she would be able to send information that day, she had learned from her

accountant that she needed to "make some adjustments," for which she would need a new

accountant because he was retiring.  (*Id.*, Ex. L at 13.)  Kotowski stated, "I'm working on

getting this taken care and have reached out to the new accountant.  Hopefully, this won't

take much more time."  (*Id.*)

Having received a copy of Kotowski's June 1, 2020 email to the auditor,

Bricklayers' counsel emailed Kotowski on June 2, 2020, noting that she had had many

months to provide documents and comply with the audit and asking how much time was

needed.  (*Id.*, Ex. M at 14.)  He stated, "A firm deadline in the very near future is needed.

Also, not all documents requested would be subject to revision by an accountant.  Please

identify the documents that need to be amended and immediately provide the other

documents requested."  (*Id.*)  On June 4, 2020, Kotowski responded and said she would

discuss things with the new accountant the following day and then would have more

information, noting that "it was pointed out to [her] just on Monday" that some of the

6

documents needed amendments.  (*Id.*, Ex. N at 15.)  She provided further detail on her

position on the case:

> I had all the information ready to go from when we were supposed to do the audit last year, but it is not accurate.  I sent over the Fringe Benefit Forms (*All Trades*) to Amy several months back.  I can resend it if you like.  The 1099 and 1096 forms will be sent to you by tomorrow.
>
> As Matt Greenstein, my lawyer, pointed out, I have no problem complying.  Unfortunately for me, I was very sick for months with shingles and sent in payments to the fund that was never applied for some reason.  I apologize, but I truly thought that this was simply a misunderstanding.  My goal is to make sure everything is in compliance and work on getting this matter cleared up and rectified.

(*Id.*)

Bricklayers' counsel responded on June 10, 2020, stating that the reports

Kotowski had sent were not relevant to this matter and "despite your promise last week,

you have not provided me with any payroll records and you have not otherwise provided

any of the other required documents."  (*Id.*, Ex. O at 16.)  Kotowski then responded on

June 15, 2020 with three emails: the first stated that Defendants only had three employees

from the Bricklayers union, listing hours worked for each, and that she would send their

reports.  (*Id.*, Ex. P at 17.)  She further said, "My accountant has to amend the reports for

the taxes because my other accountant reported it incorrectly.  The current accountant has

an office on lake street and had his business broken into, which is causing further

delays."  (*Id.*)  The second email included information regarding two of the three

previously listed employees, but Kotowski stated that she could not find the report for the

third and was having trouble retrieving it.  (*Id.*, Ex. Q at 18.)  She said that "[t]he W2 and

other items are coming from my accountant." (*Id.*)  Kotowski sent the third email soon

after the second, asking for a copy of the union contract.  (*Id.*, Ex. R at 19.)

On an unspecified date, Bricklayers' counsel received a telephone message from

Kotowski asking for a return call, but when he called the number provided on June 24,

2020, he heard a message that her voicemail box was full and could not accept a new

message.  (Dkt. 27 ¶ 15.)  Kotowski emailed Bricklayers' counsel on July 1, 2020 and

said, "Our accountant is working on updating our accounting.  I'll send it to you once she

is finished.  I was hoping to have it by now."  (Dkt. 27-1, Ex. S at 20.)  She also provided

a mailing address in Connecticut, stating that Defendants no longer resided in Minnesota,

and asked again for the union contract.  (*Id.*)

Bricklayers' counsel affirmed under penalty of perjury that as of July 8, 2020,

Defendants had not produced any further documents for the audit.  (Dkt. 27 ¶ 18.)  In a

supplemental affidavit dated August 27, 2020, counsel stated that Kotowski still had not

produced all the documents needed, though, after the Motion for Contempt was filed, she

had sent emails attaching some of the documents on July 8 and July 13, 2020.  (Dkt. 36

¶¶ 3-5.)  Bricklayers' counsel further stated that on July 22, 2020, Kotowski informed the

auditor that she was hoping to provide certain tax documents within a week, but that

those documents had not in fact been provided.  (*Id.* ¶ 7.)  Counsel stated that no further

documents or communications had been received from Kotowski.  (*Id.* ¶ 8.)  The auditor

also provided a declaration stating that, as of August 27, 2020, she had not received all

the documents needed for the audit and listing the documents still needed.  (Dkt. 37 ¶ 3.)

Meanwhile, on July 13, 2020, Kotowski filed an "affidavit" in support of the request to continue the hearing on the Motion for Contempt.[4] (Dkt. 31.) Kotowski stated:

> 2.     Due to the COVID19 Pandemic, Defendants have been unable to successfully secure counsel, records and other documentation needed to comply with this Court's Order.
>
> 3.     Because of the change in environment, the Federal, State and Local Departments necessary to this court action have been closed, delayed and inaccessible.
>
> 4.     In 2018 my house was broken into and destroyed. I was forced to relocate to Connecticut.
>
> 5.     I have had serious health issues due to a car accident from 2018 and dealing with a consisent [sic] battle with shingles. This has prevented me from obtaining records and documentation required to comply with the court order.
>
> 6.     I have made numerous attempts to contact council, obtain new council and contact opposing counsil [sic].
>
> 7.     I have been trying to contact state and local agencies but due to Covid19 it has been unsuccessful and I have not received responses.
>
> 8.     The Defendants require additional time to securing counsel and documentation pertaining to the Courts Order.

(*Id.* ¶¶ 2-8.)

As described above, Bricklayers filed its Motion for Contempt and supporting materials on July 8, 2020, as well as further supporting materials on August 27, 2020. (Dkts. 24-27, 27-1, 36-37.) Defendants filed their opposition, which relied on the July 13

---

[4]     The document, despite stating that Kotowski was "first duly sworn, upon oath," was not notarized or signed under penalty of perjury as set forth in 28 U.S.C. § 1746. (Dkt. 31.)

Kotowski "affidavit," to the Motion for Contempt on September 2, 2020.[5] (Dkt. 40.)

The Court held a hearing on the Motion for Contempt on September 3, 2020, at which all

parties were represented by counsel.[6] (Dkt. 41.) In their brief and at the September 3

hearing, Defendants requested 60 days to comply with the February 20 Order, in addition

to requesting denial of the Motion for Contempt. (Dkt. 40 at 1, 4.) As the Court stated at

the hearing, Defendants had not filed a motion seeking an extension of time for

compliance, and therefore no extension was granted.

On October 19, 2020, the Court ordered the parties to file supplemental briefs,

with supporting evidence, stating their positions as to an appropriate monetary sanction

for civil contempt in this case, should the Court recommend a finding of civil contempt.

(Dkt. 42.) The parties were directed to "specifically discuss the factors the Court must

consider before determining the amount of the sanction." (*Id.* (citing *Chaganti &*

*Assocs., P.C. v. Nowotny*, 470 F.3d 1215, 1224 (8th Cir. 2006); *Edeh v. Carruthers*, No.

CIV. 10-2860 RJK/JSM, 2011 WL 4808194, at *3 (D. Minn. Sept. 20, 2011), *R.&R.*

*adopted sub nom. Edeh v. D. Scott Carruthers Attorneys at Law*, 2011 WL 4808191 (D.

Minn. Oct. 11, 2011)).) The parties filed the supplemental briefs and evidence on

---

[5]    At the September 3 hearing, Bricklayers asked the Court not to consider the
opposition because it was filed late and relied on Kotowski's unsworn affidavit. In view
of the serious nature of the Motion for Contempt and given that Bricklayers was able to
respond to the substance of the opposition at the hearing, the Court has considered the
opposition and unsworn affidavit.

[6]    Defendants' counsel informed the Court that he began working on this case on
Monday of the week of the September 3, 2020 hearing.

October 23, 2020. (Dkts. 43, 44, 44-1, 52.) Bricklayers' counsel affirmed under penalty of perjury on October 23, 2020 that Kotowski had not produced any additional documents, that Defendants' counsel had not contacted him regarding the audit since the September 3 hearing, and that, on a phone call that Bricklayers' counsel initiated on October 2, Defendants' counsel "indicated that records were continuing to be amended, that a new accountant had been retained, and that the records could not be produced." (Dkt. 44 ¶ 2.)

Also on October 23, 2020, Archithority filed the Motion for Extension and supporting materials.[7] (Dkts. 45, 46, 48-50.) Archithority sought an extension of time to comply with the February 20 Order, until December 18, 2020 (Dkt. 45). In a supporting declaration, Kotowski stated:

1.    . . . I am currently working with my counsel, Hellmuth & Johnson, and on September 9, 2020, I hired an accounting firm, Froehling Anderson, in order to comply with the Court's February 20, 2020 Order (the "Order"). I am taking this situation very seriously and I am working diligently on providing documents and information pursuant to the Order.

2.    I have had health issues and there have been extraneous circumstances that have affected my business and ability to comply with the Order. I am a mother of a 21 month old son. In November of 2018 I relocated to Connecticut to take care of him and my mother who has diabetes.

---

[7]    It is unclear whether there was a "good-faith" effort to meet and confer on the Motion for Extension, as required by Local Rule 7.1(a). Archithority's counsel stated that he left a voicemail for Bricklayers' counsel in an attempt to meet and confer the morning of October 23, 2020 but had not heard back from Bricklayers' counsel, and the motion was filed by 3:30 p.m. that day. (Dkt. 46.) No supplementation has been filed regarding a meet and confer. *See* D. Minn. LR 7.1(a)(1)(A). This supports the Court's concerns that the Motion for Extension was filed at the last minute to delay a decision on the Motion for Contempt.

3.    In 2018, I was in a serious car accident that caused whiplash and nerve damage. In November of 2019, I was diagnosed with a severe case of shingles. I have been on medication for the shingles and have been unable to work as the result. The medication, Gabapentin, has caused dizziness and extreme tiredness. I believe that these factors have caused cognitive impairment and prevented me from being able to get my business and legal affairs in order. Due to these circumstances. as well as the Covid-19 epidemic, Archithority has had no projects. Consequently, Archithority has no employees at this time and has not received income for this year.

4.    In April of 2020, I began communicating and working with Thomas C. Atmore, Esq. and Lora Lessard. I provided them with a payroll report as well as W2s for all Archithority employees for the year 2019. Some of my work records were missing due to a break in at my business that occurred in November of 2019. On April 28, 2020, I contacted the Minnesota Department of Employment and Economic Development in order to obtain unemployment documents and Federal Form 940s and 941s. However, due to the Covid-19 epidemic, I was unable to reach anyone that could help me as there was an enormous influx of unemployment claims.

5.    I hired an accountant, Rudy Trujillo, to amend documents required for the audit. However, Mr. Trujilo's office on Lake Street was broken into and destroyed as the result of the riots. I am presently working with a new accountant, Froehling Anderson, and expect to be able to fully comply with the Order within the next sixty days.

(Dkt. 50.) Bricklayers filed an opposition and supporting materials on October 30, 2020.

(Dkts. 55-56.)

Based on the evidence in the record, the Court makes the following recommended findings of fact and conclusions of law.[8]

---

[8]    To the extent that findings of fact may be considered conclusions of law, they will be deemed conclusions of law. Similarly, to the extent that matters expressed as conclusions of law may be considered findings of fact, they will be deemed findings of fact.

## II.    <u>MOTION FOR CONTEMPT</u>

**A.    Legal Standard**

Under the contempt power of the court, a court may punish violation of a lawful court order.  *See* 18 U.S.C. § 401(3); Fed. R. Civ. P. 70(e) (court may hold party disobeying judgment for a specific act in contempt); *see also Taylor v. Finch*, 423 F.2d 1277, 1279 (8th Cir. 1970) (citing Fed. R. Civ. P. 70; 18 U.S.C. § 401; and *United States v. United Mine Workers*, 330 U.S. 258, 302-03 (1947)) ("Courts have power to adjudge persons who wilfully disobey their orders to be in contempt and such power extends to both civil and criminal contempt."); *ecoNugenics, Inc. v. Bioenergy Life Sci., Inc.*, 381 F. Supp. 3d 1082, 1089 (D. Minn. 2019) ("18 U.S.C. § 401 establishes two classes of contempt—civil and criminal."); *BMO Harris Bank N.A. v. Alton Bean Trucking, Inc.*, No. 6:16-CV-6118, 2019 WL 2656215, at *2 (W.D. Ark. June 27, 2019) (citing and quoting the court's inherent authority,[9] 18 U.S.C. § 401, and Fed. R. Civ. P. 70 as bases for court's civil contempt authority).  "Civil contempt is 'designed both to coerce obedience and to compensate the complainant for losses sustained.'"  *Edeh*, 2011 WL 4808194, at *3 (quoting *Chao v. McDowell*, 198 F. Supp. 2d 1093, 1098 (E.D. Mo. 2002)); *see also Chi. Truck Drivers v. Bhd. Labor Leasing*, 207 F.3d 500, 505 (8th Cir. 2000) ("Civil contempt may be employed either to coerce the defendant into compliance

---

[9]    In addition to citing 18 U.S.C. § 401(3) and Federal Rule of Civil Procedure 70(e) in its brief (Dkt. 26 at 8), Bricklayers cited the Court's inherent authority in its Motion for Contempt (Dkt. 24).  Although that authority was not addressed in Bricklayers' brief, the Court would also recommend a finding of contempt pursuant to its inherent authority, for the same reasons it recommends a finding of contempt pursuant to § 401 and Rule 70(e).

with a court order or to compensate the complainant for losses sustained, or both. Either incarceration or a fine may accomplish the purpose of coercion, while, where compensation is intended, a fine is imposed, payable to complainant.") (cleaned up). "One of the overarching goals of a court's contempt power is to ensure that litigants do not anoint themselves with the power to adjudge the validity of orders to which they are subject." *Chi. Truck Drivers*, 207 F.3d at 504 (citing *United Mine Workers*, 330 U.S. at 290 n.56).

An order finding a litigant in contempt requires a "failure to comply with a 'clear and specific' underlying order." *Chaganti*, 470 F.3d at 1223 (citation omitted). "Before a party can be held in contempt for violating a court order, [the party] must have actual knowledge of the order and the order must be sufficiently specific to be enforceable." *Hazen v. Reagan*, 16 F.3d 921, 924 (8th Cir. 1994) (citation and internal quotation marks omitted). The party seeking civil contempt must prove by clear and convincing evidence "that the alleged contemnors violated a court order." *Chi. Truck Drivers*, 207 F.3d at 505. If the moving party produces such evidence, then the burden shifts to the non-moving party to show an inability to comply with the court order. *Id.* "[A]lleged contemnors defending on the ground of inability must establish: (1) that they were unable to comply, explaining why categorically and in detail; (2) that their inability to comply was not self-induced; and (3) that they made in good faith all reasonable efforts to comply." *Id.* at 506 (cleaned up).

14

### B.    Proposed Findings of Fact

Neither Archithority nor Kotowski has argued the February 20 Order was not a valid court order, nor have they argued that it was not reasonably specific.  The Court has reviewed the February 20 Order and finds that it was reasonably specific, including as to how Defendants were to comply—by providing necessary employment and payroll records, fully cooperating with the audit, and posting a bond—and that Kotowski and her former counsel understood what was required.  (Dkt. 27-1, Exs. A at 1, D at 4, K at 12.)

Moreover, the record demonstrates that Defendants had knowledge of the February 20 Order because it was served on them by certified and first-class mail, based on the subsequent email correspondence, and based on the Kotowski "affidavit" referring to the February 20 Order.  (Dkt. 23; Dkt. 27-1, Exs. A-S at 1-20; Dkt. 31.)

Further, Defendants have not complied with the February 20 Order.  The February 20 Order required Defendants to provide "**all** necessary employment and payroll records for a fringe benefit audit" within 30 days (by March 23, 2020).  (Dkt. 22 at 14 (emphasis added).)  At the September 3 hearing, Defendants' new counsel conceded that Defendants had received a copy of the February 20 Order, and, while he stated that some documents had recently been provided, he did not assert that all required documents had been provided.  Indeed, in their opposition brief, Defendants sought "sixty (60) days to comply with the Order" (Dkt. 40 at 4) and as of October 23, 2020, now seek until December 18, 2020 to comply (Dkt. 45).  Accordingly, it is undisputed that Defendants did not comply and have not complied with the February 20 Order.  Moreover, Defendants' continued delay in providing the records and intermittent communication with the auditor and

Bricklayers' counsel demonstrates that they did not "cooperate fully with the fringe benefit audit" as required by the February 20 Order. Finally, Defendants do not contend that they have posted any bond.

Based on the above, as well as the files, records, and proceedings herein, the Court makes the following proposed findings of fact by clear and convincing evidence.

1. The February 20 Order (Dkt. 22) is reasonably clear and specific and is a valid court order.

2. Archithority and Kotowski had knowledge of the February 20 Order.

3. Archithority and Kotowski violated the February 20 Order by failing to furnish all necessary employment and payroll records for a fringe benefit audit within 30 days of the date of the February 20 Order, by failing to cooperate fully with the fringe benefit audit, and by failing to post the required bond.

**C.    Proposed Conclusions of Law**

**1.    Kotowski Personally May Be Found in Contempt**

Bricklayers seeks a finding of contempt as to Kotowski as well as Archithority because she was aware of the February 20 Order, the February 20 Order "expressly required that Kotowski comply," and she has not done so. (Dkt. 26 at 10 (citing Fed. R. Civ. P. 65(d)(2)(B)); *see also* Dkt. 22 at 14 (February 20 Order stating: "That within 30 days of the date of this Order, Archithority United, LLC ('Archithority'), **by and through its owner Elena F. Kotowski**, is ordered and directed to furnish Zenith American Solutions, Inc., the Plaintiff's Third Party Administrator, all necessary employment and payroll records for a fringe benefit audit, and to cooperate fully with the fringe benefit audit.") (emphasis added).) Bricklayers also contends that, aside from the

requirements as to Kotowski in the February 20 Order itself, "company officers can be held in contempt for failing to obey orders directed at the company." (Dkt. 26 at 10)

Defendants did not argue that Kotowski could not personally be held in contempt for violating the February 20 Order. Instead, in their opposition to the Motion for Contempt, they simply expressed their intent to comply with the February 20 Order and asked for an additional 60 days to do so. (*See* Dkt. 40 at 4.)

The Court recommends the conclusion of law that Kotowski can be personally held in contempt for violating the February 20 Order. First, the February 20 Order directed Archithority, "by and through its owner Elena F. Kotowski," to provide the necessary records within 30 days. (Dkt. 22 at 14.) Consequently, the February 20 Order required Kotowski to provide those records. She did not do so. Second, "[b]ecause a court order against a business entity is binding upon the shareholders, officers, and agents who are 'in a position to carry out acts' on behalf of the business, the Court's contempt power also extends to persons associated with the business who 'have notice of the court's order and the responsibility to comply with it.'" *Paisley Park Enters., Inc. v. Boxill*, No. 17-CV-1212 (WMW/TNL), 2019 WL 2710703, at *3 (D. Minn. June 28, 2019) (quoting *Chi. Truck Drivers*, 207 F.3d at 507), *R.&R. adopted*, 2019 WL 4080782 (D. Minn. Aug. 29, 2019). "This is particularly true when a single person is the sole officer, shareholder, and agent of the business entity. Such persons are so associated with the business that it can reasonably be concluded that he or she is responsible for the acts or omissions of the business." *Id.* (citation omitted). Here, Kotowski is the owner of Archithority, was aware of the February 20 Order, and was aware of her responsibility to

17

comply with it.  Accordingly, the Court recommends the conclusion that she may be personally found in contempt for violating the February 20 Order.

### 2.    Bricklayers Has Made the Requisite Showing to Find Defendants Violated a Court Order

As discussed above, Bricklayers must prove by clear and convincing evidence "that the alleged contemnors violated a court order."  *See Chi. Truck Drivers*, 207 F.3d at 505.  Based on the Court's proposed findings of fact in Section II.B, the Court recommends the conclusion that Bricklayers has made this showing of violation of the February 20 Order by clear and convincing evidence.

### 3.    Defendants Have Not Met Their Burden to Show an Inability to Comply with the February 20 Order

Here, where Bricklayers has made the requisite showing that Defendants violated the February 20 Order, the burden shifts to Defendants to show an inability to comply. *See Chi. Truck Drivers*, 207 F.3d at 505.  "[A]lleged contemnors defending on the ground of inability must establish: (1) that they were unable to comply, explaining why categorically and in detail; (2) that their inability to comply was not self-induced; and (3) that they made in good faith all reasonable efforts to comply."  *Id.* at 506 (cleaned up). As discussed above, Defendants did not dispute the elements for a finding of contempt and instead argued in their opposition and at the hearing that Defendants have not been able to fully comply with the February 20 Order.  (*See* Dkt. 40 at 3-4.)  Bricklayers responded to Defendants' arguments regarding inability to comply at the September 3 hearing, arguing that none of the three requirements for showing an inability to comply

have been shown and that many of Defendants' contentions regarding those requirements

are contradicted by the record.

> **a.    Defendants Have Not Explained Categorically and in Detail Why They Were Unable to Comply**

Defendants argued that they were unable to comply because they could not get

certain documents from government agencies due to the COVID-19 pandemic,

specifically unemployment records, "since it is well-known that the Minnesota

Department of Employment and Economic Development has been overloaded with

unemployment claims." (Dkt. 40 at 3.)  Defendants also argued that they could not

comply with the February 20 Order because of Kotowski's health issues resulting from a

car accident and shingles and because they were unable to obtain documents "due to the

need to amend reports for their taxes." (*Id.*)  In addition, Kotowski's "affidavit" stated

that her house was "broken into and destroyed" in 2018, requiring her to move to

Connecticut. (Dkt. 31 ¶ 4.)  Defendants further argued inability to comply at the hearing

because Kotowski has a young child and had to move to Connecticut to care for a parent.

The Court finds that Defendants have not sufficiently shown that they were unable

to comply, and, to the extent any inability has been shown, it has not been explained

"categorically and in detail."  First, Defendants claimed they were unable to get records

from government agencies due to COVID-19 (Dkt. 40 at 3; Dkt. 31 ¶¶ 2-3, 7), but that

assertion is too general and fails to explain why Defendants could not provide records

that should be in their possession.  The only somewhat specific detail offered in

opposition to the Motion for Contempt is that "it is well-known that the Minnesota

Department of Employment and Economic Development has been overloaded with unemployment claims," creating difficulty with getting unemployment records. (Dkt. 40 at 3.) However, Defendants offered no detail or supporting evidence regarding the status of that agency—for example, whether it was closed to public inquiry or simply non-responsive. Defendants also did not describe in any detail what efforts were made to obtain documents from any government agency, including which agencies were contacted, when each agency was contacted, and whether a response was received.[10] In fact, Kotowski's October 23 declaration in support of Archithority's Motion for Extension indicates that only a single attempt was made—on April 28, 2020.[11] (Dkt. 50 ¶ 4.) The Court is not persuaded by Defendants' reliance on governmental agency delay when it appears Defendants made a single attempt (six months ago) to obtain records. Further, any difficulties Defendants had in obtaining documents from government agencies in the eight months since Judge Davis issued the February 20 Order cannot explain why Defendants did not provide documents they should have in their possession, such as tax records and certain unemployment submissions.

Second, Defendants' contention that they could not obtain documents "due to the need to amend reports for their taxes" (Dkt. 40 at 3) is similarly inadequately explained.

---

[10]    Kotowski also claims the COVID-19 pandemic made it difficult for her to secure counsel and records (Dkt. 31 ¶ 2), but this assertion is unsupported by any specifics.

[11]    Because Archithority's arguments in support of its Motion for Extension overlap considerably with Defendants' opposition to the Motion for Contempt, the Court considers evidence submitted and arguments made in support of the Motion for Extension when addressing Defendants' inability to comply.

As Bricklayers pointed out at the hearing, the need to amend certain documents did not prevent Defendants from providing the documents as-is and then providing the amendments as part of the audit process—nor did the February 20 Order provide an exception for documents requiring amendment.  Further, Defendants did not support their need to amend with any evidence, such as a supporting affidavit from an accountant or attorney, or even a sworn affidavit from Kotowski.  Defendants did not even describe the nature of the amendments or state with any particularity which documents required amendment.  Further, the record shows that Kotowski raised the issue of making "adjustments" to some documents on June 1, 2020 (Dkt. 27-1, Ex. L at 13) but apparently still had not done so as of September 2, 2020, when Defendants filed their opposition to the Motion for Contempt (*see* Dkt. 40 at 3).  Although Kotowski stated in her June 15, 2020 email that her accountant's office on Lake Street had been broken into (Dkt. 27-1, Ex. P at 17), she has not explained why no progress was made with respect to the accounting between June 2020 and the September 3 hearing.  Defendants' reliance on this break-in is further undermined by Kotowski's July 1 email to Bricklayers' counsel stating: "Our accountant is working on updating our accounting.  I'll send it to you once she is finished.  I was hoping to have it by now."  (Dkt. 27-1, Ex. S at 20.)  Kotowski did not suggest in that email that the break-in was causing any further delays.

Third, Kotowski's personal circumstances are insufficiently described to support a conclusion of inability to comply.  Kotowski initially relied on a break-in at her house in 2018 requiring her to move to Connecticut, a car accident in 2018 resulting in "serious health issues," and a "battle with shingles" as reasons for her non-compliance.  (Dkt. 31

¶¶ 4-5.)  At the September 3 hearing, Defendants asserted that Kotowski had health issues that potentially affected her cognitive abilities and Kotowski's status as a mother justified her non-compliance.  Building on this argument, in her October 23 declaration, Kotowski claimed she was in a serious car accident in 2018, was diagnosed with a severe case of shingles in November 2019, and has been on Gabapentin for her shingles, and that she "believe[d]" these factors were causing cognitive impairment and preventing her from getting her business and legal affairs in order.  (Dkt. 50 ¶ 3.)  Kotowski did not mention any of these circumstances in her correspondence with counsel in the spring and summer of 2020, and no competent medical evidence supports her alleged cognitive impairment.  The Court finds these circumstances do not demonstrate an inability to comply, particularly when Kotowski had professed her intent to comply in Summer 2020 and had retained a lawyer and an accountant to assist at that time.  The Court also is not persuaded by Defendants' reliance on Kotowski's status as a mother of a 20-month-old child or that she moved to Connecticut to take care of a diabetic mother in 2018.  (*See* Dkt. 48 at 4.)  There is no explanation of how these circumstances—which certainly are not unusual—prevented Kotowski from complying with the February 20 Order.

In sum, while Defendants claim several circumstances show inability to comply, they failed to provide any explanation of how those circumstances prevented them from providing the records and cooperating with the audit as ordered by Judge Davis on February 20, 2020.  Indeed, the record is devoid of any action taken by Defendants between February 20, 2020 and May 27, 2020, when Kotowski first responded to Bricklayers' counsel.  (*See* Dkt. 27-1, Ex. I at 10.)  Further, as Bricklayers noted at the

22

hearing, Kotowski repeatedly told Bricklayers' counsel and auditor that she would send documents but then did not. (*Id.* at Ex. K at 12, Ex. L at 13, Ex. N at 15, Ex. O at 16, Ex. P at 17, Ex. Q at 18, Ex, S at 20.) Her repeated representations in the spring and summer of 2020 that she would provide documents undermines her claims that she was unable to comply. Defendants did not explain "categorically and in detail" why they were unable to comply with the February 20 Order, which precludes a finding of inability to comply.

### b. Defendants Have Not Shown Their Inability to Comply Was Not Self-Induced

The Court need not reach whether Defendants' inability to comply was self-induced because they failed to meet the "categorically and in detail" requirement. *See Chi. Truck Drivers*, 207 F.3d at 506 (cleaned up). Nevertheless, to establish a clear record, the Court will also address the other two requirements.

Defendants argued that none of the reasons for their inability to comply were self-induced because "[t]he Covid-19 pandemic hampered or restricted the ability of businesses to conduct their operations worldwide," "Ms. Kotowski's health issues clearly were not self-induced," and "the issues with Defendants' taxes had to do with the accountant reporting information incorrectly." (Dkt. 40 at 3-4.)

The Court finds Defendants' arguments too general in view of their failure to sufficiently explain how these circumstances prevented compliance. In other words, it is not enough to rely on the fact the COVID-19 pandemic and Kotowski's health issues were not self-induced. The question is whether the inability to comply was self-induced, *see Chi. Truck Drivers*, 207 F.3d at 506, and Defendants have not shown their inability

23

was not self-induced because they have not explained how the COVID-19 pandemic

impeded their efforts to comply with the February 20 Order. Similarly, even if the issues

with Defendants' taxes fall solely on their accountant, that does not explain why the

original records were not provided, nor have Defendants shown they made any efforts to

obtain corrected records as quickly as possible in view of the February 20 Order. Indeed,

it appears that Kotowski waited almost a month to provide records to the accountant she

hired in September 2020. (*See* Dkt. 49 ¶¶ 2, 4.) It is Defendants' burden to show that

their inability to comply was not self-induced. *See Chi. Truck Drivers*, 207 F.3d at 506.

Defendants' generic reliance on the pandemic, health issues, and accounting errors is

insufficient to establish that their inability to comply was not self-induced.

### c.    Defendants Have Not Shown They Made in Good Faith All Reasonable Efforts to Comply

As to the third requirement, Defendants argued that they have complied with some

parts of the February 20 Order and provided some information and that they have made a

good faith effort to comply, having retained counsel in April 2020 and again in

September and "been in regular touch with Plaintiff's counsel." (Dkt. 40 at 4.) As an

initial matter, partial compliance does not necessarily establish they made the requisite

"good faith all reasonable efforts to comply." *See Chi. Truck Drivers*, 207 F.3d at 506

(cleaned up).

Further, the Court does not agree that Defendants made good faith efforts to

comply. The record reveals several periods of inactivity and delay on Defendants' part,

which undermines any contention that Defendants have made all reasonable efforts.

Defendants have not rebutted Bricklayers' contention that the documents provided by Defendants at various times are unrelated to this action, duplicative of documents already provided to Bricklayers, or incomplete. (*See* Dkt. 26 at 9; Dkt. 27-1, Ex. O at 16.) Further, at the hearing, Bricklayers stated that all of the items listed in the auditor's August 27, 2020 declaration as missing (Dkt. 37 ¶ 3) were still missing, which Defendants did not dispute, and then in its October 23, 2020 supplemental brief, Bricklayers stated that Defendants had not produced any further documents (Dkt. 43 at 1 (citing Dkt. 44 ¶ 2)). Defendants have not said otherwise. (*See* Dkt. 52.) It seems that the state of this case is not appreciably different as of October 23, the date the parties filed their supplemental briefs, than it was when Judge Davis issued the February 20 Order. The Court finds that Defendants have not met their burden of showing they made in good faith all reasonable efforts to comply.

In sum, for all these reasons, the Court recommends the conclusion that Defendants have not met their burden of showing an inability to comply.

* * *

Based on the above, as well as the files, records, and proceedings herein, the Court makes the following proposed conclusions of law.

1.   Elena F. Kotowski may be found in contempt for violating the February 20 Order.

2.   Bricklayers has proven by clear and convincing evidence that Archithority and Kotowski violated the February 20 Order.

3.   Archithority and Kotowski have not met their burden of showing an inability to comply with the February 20 Order.

4.   Archithority and Kotowski are in civil contempt for their violations of the February 20 Order.

**D.   Appropriate Sanctions**

The question remains as to the appropriate sanction for Defendants' contempt. "Civil contempt may be employed either to coerce the defendant into compliance with a court order or to compensate the complainant for losses sustained, or both.  Either incarceration or a fine may accomplish the purpose of coercion, while, [w]here compensation is intended, a fine is imposed, payable to complainant."  *Chi. Truck Drivers*, 207 F.3d at 505 (cleaned up).  "If a financial contempt sanction is intended to coerce compliance with an order, 'the sanction should be payable to the court, rather than to the opposing party.'"  *World Wrestling Entm't, Inc. v. AWA Wrestling Entm't, Inc.*, No. 07-CV-2058-ADM-KMM, 2019 WL 2393062, at *1 (D. Minn. Apr. 12, 2019) (quoting *Chaganti*, 470 F.3d at 1224), *R.&R. adopted*, 2019 WL 2393009 (D. Minn. Apr. 30, 2019).  "A compensatory sanction, on the other hand, may be paid to the complainant when the amount is based on evidence of the losses it sustained." *Id.* (citing *United Mine Workers*, 330 U.S. at 304).  "Any sanction for civil contempt must not be punitive."  *Id.* (citations omitted).

District courts have broad discretion in crafting a sanction to coerce compliance. *Edeh*, 2011 WL 4808194, at *3 (quoting *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys.*, 369 F.3d 645, 657 (2d Cir. 2004)).  A court should determine the amount of a coercive civil sanction after considering certain factors: "'the character and magnitude of the harm threatened by continued contumacy,' 'the probable effectiveness

of any suggested sanction in bringing about the result desired,' and 'the amount of [the contemnor's] financial resources and the consequent seriousness of the burden' to that particular party." *Chaganti*, 470 F.3d at 1224 (quoting *United Mine Workers*, 330 U.S. at 304); *see also Edeh*, 2011 WL 4808194, at *3 (citing *United Mine Workers*, 330 U.S. at 303-04) (listing four factors: "(1) the harm from noncompliance; (2) the probable effectiveness of the sanction; (3) the financial resources of the contemnor and the burden the sanctions may impose; and (4) the willfulness of the contemnor in disregarding the court's order").

### 1.    Coercive Sanction

In its initial brief, Bricklayers argued that the Court should order both coercive and compensatory sanctions but did not request a specific coercive sanction.  (*See* Dkt. 26 at 12, 14.)  Bricklayers stated that "[t]he court should fine Archithority and Kotowski in an amount that will coerce compliance with the Order" and "can also order that Kotowski be taken into custody until such time as she complies with the Order."  (*Id.* at 12.) Bricklayers further suggested that "Kotowski could be ordered to pay all amounts ultimately shown to be due and owing to" Bricklayers, noting that its Complaint alleges that she is personally responsible for all obligations and amounts owed and that she has evaded service of process.  (*Id.* at 13 (citing Dkt. 1 ¶ 13).)  At the hearing, Bricklayers requested that the Court impose a daily fine on both Defendants until they comply with the February 20 Order and, if they do not comply with the February 20 Order within ten days, impose a sanction of incarcerating Kotowski until Defendants complied.  In its supplemental brief, Bricklayers argued that the Court should impose both coercive and

compensatory monetary sanctions. (Dkt. 43 at 2.) Specifically, Bricklayers stated that Kotowski should be ordered to pay a fine to the Court of $500 per day of non-compliance and, if the February 20 Order was not complied with or any of the monetary sanctions requested not paid within fourteen days of the Court's order, that Kotowski should be taken into custody. (*Id.* at 2, 6.)

In their initial brief, Defendants did not address potential sanctions, rather only asked that the Motion for Contempt be denied. (Dkt. 40.) In their supplemental brief, Defendants requested that no sanctions be ordered or, "[i]n the event that the Court believes some sanction is warranted," that the Court impose a sanction of $100 or less. (Dkt. 52 at 2.) The parties' specific arguments as to each factor for determining a coercive sanction are summarized here with the Court's analysis of each factor. *See Chaganti*, 470 F.3d at 1224; *Edeh*, 2011 WL 4808194, at *3.

### a. Harm from Noncompliance

Regarding the first factor of harm from noncompliance, Bricklayers argued that there is harm here because it is an ERISA case involving benefits to employees where "[i]f the employer fails to make contributions, it is taking for itself the benefits earned by the employee," which "can result in the employee being deprived of" benefits or a "fund paying out benefits for which the employer has made no corresponding contribution." (Dkt. 43 at 3.) Bricklayers also argued that it had suffered harm by having to incur attorneys' fees in pursuing compliance (*id.* at 3-4), which the Court addresses separately below. Defendants, however, argued that the harm in this case "is not severe," because Bricklayers is a large organization while Archithority is a small business, and "the

relative harm to Plaintiff is small and pales in comparison to the detrimental effect that a monetary sanction would have on the business." (Dkt. 52 at 3.) Defendants also noted that Archithority "is in the process" of providing records to Plaintiff. (*Id.*) Defendants additionally argued that "a warning would be more suitable" than a monetary sanction and that "Archithority has not received a warning of a forthcoming sanction, but is complying nonetheless." (*Id.*)

The Court concludes that the harm is both monetary and prejudicial to the timely resolution of this case. Bricklayers has not only incurred significant expense in litigating this case after judgment, but is almost no closer to collecting the amounts owed under the judgment than it was when it filed this case over a year ago and obtained a judgment over eight months ago. *See Nat'l Credit Union Admin. Bd. v. Cumis Ins. Soc'y, Inc.*, No. 16-CV-139 (DWF/LIB), 2018 WL 6288110, at *3 (D. Minn. Oct. 22, 2018) ("In the present case, the harm is both monetary and prejudicial to the parties for timely resolution of this case. Mr. Sobiech's continued refusal to comply with CUMIS's subpoena and this Court's Orders has caused unnecessary litigation expenses to be incurred . . . , as well as, an unnecessary delay on the resolution of relevant discovery in this case."), *R.&R. adopted*, 2018 WL 6271044 (D. Minn. Nov. 30, 2018); *Edeh*, 2011 WL 4808194, at *4 ("The primary harm at issue is monetary. Despite the judgment being entered, plaintiff has not received any payment toward that judgment. Simply put, Carruthers' refusal to respond to plaintiff's discovery regarding his financial situation is an obstacle to plaintiff's collection of the judgment. . . . Holding Carruthers in contempt is the only way to ensure that plaintiff obtains the postjudgment discovery to which he is entitled.").

The Court is deeply troubled by Defendants' failure to recognize the seriousness of the present posture of the case—i.e., that the motion before the Court is a Motion for Contempt—and the harm caused by their conduct. Defendants have repeatedly sought to minimize the seriousness by recasting it as a question of delay in providing documents rather than a failure to comply with the February 20 Order. The Court noted its concerns at the September 3 hearing when Defendants' response to the Motion for Contempt was to ask for 60 days from the date of the hearing to comply with the February 20 Order. The Court emphasized that the question before the Court was whether Defendants should be found in civil contempt, not whether they should be granted more time to provide documents. Defendants' arguments regarding an appropriate coercive penalty—which discount the harm to Bricklayers and the union members affected by this case and amount to little more than insufficiently supported assertions of why they could not comply earlier—demonstrate Defendants' abject failure to take responsibility for their conduct and their failure to recognize that the harm is not simply the delayed provision of documents, it is the delayed provision of documents resulting in a delayed payment by Archithority of the amounts due under the collective bargaining agreement.[12]

---

[12]    It is worth reviewing how many times Defendants have tried to "kick the can down the road" in this case. Bricklayers filed the Motion for Contempt on July 8, 2020. (Dkt. 24.) Five days later, on July 13, 2020, Kotowski sought a 90-day "continuance" of the Motion for Contempt hearing until October 12, 2020. (Dkt. 30.) At the September 3 hearing, Kotowski sought an additional 60 days to comply—until November 2, 2020. Then, on October 23, 2020, Defendants filed the Motion for Extension seeking until December 18, 2020 to comply with the February 20 Order (adding another 46 days to the 60-day extension requested on September 3). These repeated requests for extension—none of which were granted—confirm Defendants' failure to take any responsibility for

Turning to Defendants' specific arguments, Defendants first try to characterize the harm as "not severe." (Dkt. 52 at 3.) In fact, no one knows the full extent of the harm because Defendants have not provided the information that will allow the auditor to calculate what Defendants owe. This in itself is harmful to Bricklayers and the affected employees.

Second, Defendants claim that "Archithority is required to provide accounting records" and is doing so, but that assertion elides two important facts that are both sources of harm to Bricklayers: that, as addressed more fully below, Defendants have made little progress in providing the records, and that Defendants are not merely required to provide accounting records but are also, pursuant to a court order, to post a bond and ultimately pay several categories of monetary awards. (Dkt. 22 at 14-15.) This case is not just about providing accounting records; the records are a means to the end of final resolution of the case and payment of what is owed.

Third, Defendants argue that a warning would be more appropriate and that they have not received a warning of a forthcoming sanction. (Dkt. 52 at 3.) On the contrary, Defendants have had multiple warnings that contempt sanctions were forthcoming. Bricklayers first raised the possibility of contempt in an email to Defendants' then-counsel on April 17, 2020. (Dkt. 27-1, Ex. C at 3.) Counsel raised it again in an email to Kotowski on May 27, 2020. (*Id.*, Ex. H at 8.) The next warning came when Bricklayers proceeded to file the Motion for Contempt on July 8, 2020. (Dkt. 24.) Bricklayers'

---

their conduct, or even to acknowledge that they were required to obey the February 20 Order by providing the documents by March 23, 2020.

supporting brief asked the Court to "order appropriate sanctions," specifically that the

Court "fine Archithority and Kotowski in an amount that will coerce compliance with the

Order" and "order that Kotowski be taken into custody until such time as she complies

with the Order."  (Dkt. 26 at 1, 12.)  Bricklayers also asked for its attorneys' fees and

costs incurred in bringing the Motion for Contempt.  (*Id.* at 13-14.)  At the September 3

hearing, Bricklayers asked the Court to impose a daily fine on Defendants until

compliance is achieved and to set a date for incarceration if Defendants did not comply,

and reiterated its request for legal fees in bringing the Motion for Contempt.  Defendants'

contention that they had no warning of a forthcoming sanction is contradicted by the

record and itself troubling.  In sum, this factor weighs strongly in favor of a sanction.[13]

### b.    The Probable Effectiveness of the Sanction

Regarding the second factor of the probable effectiveness of the sanction,

Bricklayers argued that "[t]he history of this matter . . . establishes that Kotowski is only

going to act if and when there are concrete consequences for failing to act" and that "it is

probable that a significant monetary sanction for past non-compliance and an ongoing

monetary sanction, coupled with a potential incarceration for future noncompliance, will

have the desired effect."  (Dkt. 43 at 4.)  Defendants argued that a sanction "would not be

particularly effective," because Defendants had hired counsel and an accountant and so,

---

[13]    Defendants argued that "the relative harm" to Bricklayers was outweighed by the harm to Defendants (Dkt. 52 at 3), but the relative harm is not a factor in the analysis; rather the analysis requires evaluation of the harm from noncompliance.  *Chaganti*, 470 F.3d at 1224; *Edeh*, 2011 WL 4808194, at *3.  This "relative harm" argument also is unsupported by anything but the most conclusory of assertions regarding Archithority's financial circumstances and no evidence regarding Kotowski's finances.

since they are already spending money on those fees, a "money sanction would only further distress an already battered business." (Dkt. 52 at 3-4.) Defendants stated that they take the Court's orders seriously and expect full compliance by mid-December. (*Id.* at 4 (citing Dkt. 49 ¶ 5).)

The Court is not convinced by Defendants' arguments, since it seems that nothing that has transpired in this case thus far has prompted Defendants to do more than the most minimal partial compliance with the February 20 Order. The history of this case includes repeated failures by Defendants to respond to this lawsuit in the first place and then to comply with the February 20 Order. (Dkt. 43 at 4.) The February 20 Order had little effect on Defendants, as it was followed by nearly two months of silence and inaction. Prodding by Bricklayers' counsel from April to July 2020 elicited some promises and assurances from Defendants, but little in the way of documents and compliance with the February 20 Order. The filing of the Motion for Contempt prompted some activity, but not nearly enough, as the documents provided soon after that filing (Dkt. 36 ¶¶ 4-5) were duplicative of documents already in Bricklayers' possession. This Court's statements at the September 3 hearing regarding the serious nature of the Motion for Contempt and explicit suggestion that Defendants immediately provide documents apparently had no effect, as demonstrated by Bricklayers' report that Defendants have produced no documents since the hearing. (Dkt. 43 at 1 (citing Dkt. 44 ¶ 2).)

Defendants have not represented otherwise; the only progress Defendants have identified is hiring legal counsel the week of September 3, 2020 and then an accountant on September 9, 2020. (Dkt. 52 at 3; Dkt. 50 ¶ 1.) That is not nearly sufficient.

Defendants previously hired counsel in April 2020 (Dkt. 27-1, Ex. A at 1) and hired a new accountant in June 2020 (*id.*, Ex. L at 13; *id.*, Ex. N at 15).  Since those steps yielded few results then, the Court doubts that, in the absence of a coercive sanction, Defendants' latest steps will result in compliance.[14]  Indeed, the fact that it took Kotowski almost a month—from September 9 to October 5, 2020 (Dkt. 49 ¶¶ 2, 4)—to provide her new accountant with records suggests additional delay, not diligence, on Defendants' part.

For these reasons, notwithstanding Defendants' assurances that compliance "is already well underway" (Dkt. 52 at 1), the Court has little confidence that Defendants will actually provide the records to Bricklayers by December 18, 2020 (or at all) in the absence of a coercive sanction.  Based on the record, the Court concludes that "civil contempt is one of the few (if not the only) remaining tools left that might bring about compliance with the Court's Order.  As a result, the Court concludes that this factor also weighs in favor of contempt."  *Paisley Park Enters.*, 2019 WL 2710703, at *4.

### c.    The Financial Resources of the Contemnor and the Burden the Sanctions May Impose

Regarding Defendants' financial resources and the burden sanctions may impose, Bricklayers made two arguments.  First, Defendants did not argue inability to pay in their

---

[14]    Kotowski states that the office of the accountant she hired in June 2020 "was broken into and destroyed as a result of the [Lake Street] riots."  (Dkt. 50 ¶ 5.)  This does not explain why apparently no progress was made between June and the September 3 hearing.  In fact, on July 1, Kotowski told Bricklayers' counsel, "Our accountant is working on updating our accounting.  I'll send it to you once she is finished.  I was hoping to have it by now."  (Dkt. 27-1, Ex. S at 20.)  She did not mention any delay caused by the riots.  Defendants also have not explained why they did not hire counsel to assist with this matter until the week of the September 3 hearing or why they waited almost a month to provide records to the accountant hired in September 2020.

September 2 brief and therefore have waived the issue.  Second, Bricklayers argued that "[t]here is no indication that [Kotowski] lacks the resources to pay sanctions nor that it would be a serious burden" given that Kotowski continues to operate her business and has retained counsel.  (Dkt. 43 at 4-5.)  Defendants contended in their October 23 brief that Archithority is a small business with limited resources run by Kotowski, who has caregiving responsibilities for a 20-month-old child and a diabetic parent in Connecticut. (Dkt. 52 at 4 (citing Dkt. 50 ¶ 2); *see also id.* at 1 ("small company" with "limited resources" "that has already been plagued due to the fallout of business due to the Covid-19 epidemic").)  Defendants further stated that Archithority does not currently have any employees or income.  (*Id.* at 4 (citing Dkt. 50 ¶ 3).)  Therefore, Defendants contend that "any sanction would disproportionately and unfairly impact Archithority, with no impact on its willingness and ability to comply with the Order."  (*Id.*)

The Court finds Defendants' ability-to-pay arguments unpersuasive.  Even accepting Defendants' statements that Archithority is "small" with "limited" resources and is not currently generating income, that is not enough to convince the Court that a monetary sanction is inappropriate.  Defendants provided no evidence of Archithority's finances (e.g., does Archithority have cash or other assets) and made no representations as to Kotowski's personal financial resources.[15]  This factor is therefore neutral with respect to a financial sanction.  *See Paisley Park Enters.*, 2019 WL 2710703, at *4.

---

[15]    Kotowski is a named Defendant and, as discussed in Section II.C.1, may be personally found in contempt.

With respect to the sanction of imprisonment, the Court also considers imprisonment an appropriate sanction given the lack of progress in complying over eight months—which included several warnings that a contempt finding could result. The Court also considers the increasing attorneys' fees incurred by Bricklayers in its efforts to obtain compliance with the February 20 Order. "While the sanction of imprisonment is undoubtedly burdensome for any civil contemnor," in this case imprisonment may be the only way to coerce Defendants' cooperation. *Edeh*, 2011 WL 4808194, at *4; *see also Paisley Park Enters.*, 2019 WL 2710703, at *5 ("The only meaningful sanction remaining to the Court now is the issuance of a bench warrant for the arrest of [corporate defendant's sole owner]."). "It is a sanction that can be quickly and inexpensively purged, if [Defendants are] so inclined." *Edeh*, 2011 WL 4808194, at *4.

### d. The Willfulness of the Contemnor in Disregarding the Court's Order

Regarding the fourth factor of willfulness, Bricklayers argued that Defendants have willfully disobeyed the Court's judgment because they had repeatedly evaded compliance with the February 20 Order prior to the Motion for Contempt, had not made any effort to comply since the hearing on the Motion for Contempt, and, when contacted by Bricklayers' counsel on October 2, 2020, gave "the same excuses for non-compliance that had been offered previously." (Dkt. 43 at 5 (citing Dkt. 44 ¶ 5).) Bricklayers contended that Defendants are trying to evade the requirements of the collective bargaining agreement by "'commingl[ing]' [payroll records] with the 'non-union'" company. (*Id.* at 5-6 (citing Dkt. 44 ¶ 6).) Defendants, for their part, argued that "[t]his

is not a case about the intentional shirking of responsibilities," but rather "an instance of an inexperienced small business that hired a few union employees and is now in over its head." (Dkt. 52 at 3.)

The Court need not determine whether Defendants are attempting to evade their obligations under the collective bargaining agreement to address this factor. It is enough that Defendants have been aware of the February 20 Order and their obligations pursuant to that order for months now, have not complied with the February 20 Order (despite repeated promises that they would do so), and only took preliminary steps toward compliance after the Court set the September 3 hearing on the Motion for Contempt. The Court therefore concludes that Defendants' disregard of the February 20 Order is willful and that this factor weighs in favor of a sanction.

* * *

Based on the foregoing analysis, the Court concludes that a monetary sanction coupled with the prospect of the sanction of imprisonment is warranted in this case until Defendants comply with the February 20 Order. Bricklayers requested a fine payable to the Court of at least $500 per day for each day of non-compliance (Dkt. 43 at 2, 6), while Defendants requested a fine, if any, of totaling no more than $100 (Dkt. 52 at 2). The Court recommends that Defendants, jointly and severally, be fined $100 per day until they have complied with the February 20 Order. The Court has considered Defendants' representations about Archithority's resources in recommending this fine and concludes that $100 per day is not a great amount—particularly when Defendants failed to provide any proof of an inability to pay. *See United States v. Open Access Tech. Int'l, Inc.*, 527

F. Supp. 2d 910, 913 (D. Minn. 2007) (fining defendant $5,000 per day because it "has repeatedly flouted" court orders and "a large fine is necessary to prod this recalcitrant defendant into compliance," where defendant was a large corporation with large financial resources).

The Court further recommends that, in addition to the daily fine, if Defendants have not achieved compliance with the February 20 Order within fourteen days of an Order from Judge Davis adopting this Report and Recommendation, a bench warrant be issued for the arrest of Kotowski and that Kotowski be arrested immediately by the United States Marshal and detained until she purges the contempt by complying. "[I]n this case imprisonment is the only way to coerce" Defendants' compliance in a timely manner. *Edeh*, 2011 WL 4808194, at *4

### 2.    Compensatory Sanction

For the compensatory sanction, Bricklayers requested an award of its costs and attorneys' fees "incurred in pursuing compliance with the Order, including those incurred in bringing this Motion," "requir[ing] that Archithority and Kotowski, personally, are jointly and severally responsible for the payment of such fees and costs." (Dkt. 26 at 14.) Bricklayers additionally maintained that Archithority is already responsible for Bricklayers' attorneys' fees under ERISA. (*Id.* (citing 29 U.S.C. § 1132(g)(2)(D)).) Bricklayers initially requested that the Court allow it to submit an affidavit setting out the fees and costs incurred in pursuing compliance with the February 20 Order and bringing this motion. (*Id.*) In its supplemental brief addressing the factors for determining a coercive sanction, Bricklayers represented that its attorneys' fees since the February 20

Order, for services rendered from April through September 2020, total $13,761.40 (Dkt. 43 at 4 (citing Dkt. 44 ¶ 3).) Bricklayers submitted its counsel's invoices with time entries for that period. (Dkt. 44-1 at 1-8, Ex. A.)

Defendants initially did not address potential sanctions, including attorneys' fees and costs, instead asking that the Motion for Contempt be denied. (Dkt. 40.) In their supplemental brief, as discussed above, Defendants argued the Court should not issue any sanctions. (Dkt. 52.) Since the supplemental briefs were filed simultaneously, Defendants have not had an opportunity to respond to Bricklayers' claimed fees amount. (*See id.*)

Having considered the parties' arguments and supporting evidence, the Court recommends imposing compensatory sanctions in the amount of Bricklayers' reasonable attorneys' fees and costs expended in pursuing compliance with the February 20 Order, including in bringing the Motion for Contempt and in connection with the October 23 supplemental briefing. Compensatory sanctions are certainly appropriate: Bricklayers has been expending resources on seeking Defendants' compliance, including by bringing the Motion for Contempt, since the February 20 Order was entered and has thus sustained losses. *See Chi. Truck Drivers*, 207 F.3d at 505 (civil contempt may be employed to compensate the complainant for losses sustained); *Edeh*, 2011 WL 4808194, at *3 (same). The Court further recommends that, if Judge Davis adopts this Report and Recommendation, Bricklayers submit an updated affidavit regarding its attorneys' fees and costs within seven (7) days of that Order, and that Defendants be given seven (7)

days to file any objections only as to the amount of the attorneys' fees and costs sought by Bricklayers.

### III.    MOTION FOR EXTENSION

The Court turns to Archithority's Motion for Extension, which seeks an extension of time until December 18, 2020 to comply with the February 20, 2020 Order.  (Dkt. 45.) The Court first addresses two preliminary matters before turning to the merits.

First, the Court questions the timing of the Motion for Extension.  At the September 3 hearing, the Court made it clear that it would not grant or recommend an extension because Defendants had not moved for an extension of time to comply. Nevertheless, Defendants did not move for an extension of time in the several weeks following the hearing.  Instead, Archithority filed the Motion for Extension on October 23, 2020, five days after the Court's order for supplemental briefing on the question of an appropriate monetary sanction for civil contempt in this case and on the same day the supplemental briefs were due.  (*See* Dkts. 42, 45.)  The Motion for Extension essentially repeats Defendants' arguments in opposition to the Motion for Contempt (Kotowski's health, status as a mother, move to Connecticut, etc.).  The Court addresses Archithority's arguments in support of an extension below, but is concerned that the Motion for Extension appears to have been brought as an attempt to evade a decision on the Motion for Contempt.

Second, the parties dispute which Federal Rule of Civil Procedure applies. Archithority sought an extension under Federal Rule of Civil Procedure 6(b)(1)(B).  (Dkt. 48 at 3.)  According to that Rule, "[w]hen an act may or must be done within a specified

time, the court may, for good cause, extend the time . . . on motion made after the time

has expired if the party failed to act because of excusable neglect."  Fed. R. Civ. P.

6(b)(1)(B).  However, Bricklayers contended that Federal Rule of Civil Procedure 60(b),

not Rule 6(b)(1)(B), applies to Archithority's Motion for Extension on the grounds that

Archithority is actually seeking relief from the February 20 Order and that Order is a

final judgment and order.  (Dkt. 55 at 5.)  Rule 60(b) provides in relevant part: "On

motion and just terms, the court may relieve a party or its legal representative from a final

judgment, order, or proceeding for the following reasons . . . mistake, inadvertence,

surprise, or excusable neglect."  Fed. R. Civ. P. 60(b)(1).  Bricklayers further argued Rule

6(b)(2) specifically precludes an extension of the time to act under Rule 60(b).  (Dkt. 55

at 5.)  Because the Court recommends denial of the Motion for Extension under both

Rule 6(b)(2)(B) and Rule 60(b)(1), the Court need not decide which Rule applies.

## A.    Analysis Under Rule 6(b)(2)(B)

Under Rule 6(b), "[w]hen an act may or must be done within a specified time, the

court may, for good cause, extend the time . . . on motion made after the time has expired

if the party failed to act because of excusable neglect."  Fed. R. Civ. P. 6(b)(1)(B).  "The

determination as to what sort of neglect is considered excusable is an equitable one,

taking account of all relevant circumstances surrounding the party's own omission."

*Hawks v. J.P. Morgan Chase Bank*, 591 F.3d 1043, 1048 (8th Cir. 2010) (citation

omitted).  "Excusable neglect encompasses four factors: prejudice to the non-moving

party, the length of the delay, the movant's good faith, and the reason for the delay.  The

reason for the delay is a key factor in the analysis."  *Albright ex rel. Doe v. Mountain*

*Home Sch. Dist.*, 926 F.3d 942, 951 (8th Cir. 2019) (citing *In re Guidant Corp.*

*Implantable Defibrillators Prods. Liab. Litig.*, 496 F.3d 863, 866-67 (8th Cir. 2007)).

The Court addresses these factors below.

### 1.    Prejudice to the Non-Moving Party[16] and the Length of the Delay

For the first and second factors, Archithority argues that the requested extension is

brief and will have limited impact on judicial proceedings because "[t]he only

outstanding judicial proceeding would involve an order for judgment following [the

audit]."  (Dkt. 48 at 6.)  Archithority also argues that Bricklayers will not be prejudiced,

and the extension "would only provide adequate time for Achithority [sic] to work with

an accountant to provide the records."  (*Id.* at 7.)

The Court rejects Archithority's characterization of the desired extension as

"brief."  (Dkt. 48 at 2, 6, 7.)  As of the date of this Report and Recommendation,

Archithority has enjoyed a de facto extension from March 23, 2020 (30 days after the

February 20 Order) until November 3, 2020—and still has not complied with the

February 20 Order.  Archithority's proposed December 18, 2020 date amounts to an

extension of eight months and 25 days, which is anything but "brief."

---

[16]    Archithority cited *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380 (1993), for the four factors for excusable neglect and so includes the potential impact on judicial proceedings; there, the Supreme Court included the impact on judicial proceedings in the factor addressing the length of the delay.  *Id.* at 395.  The Court was addressing a different rule, Bankruptcy Rule 9006(b)(1), but discussed the use of the phrase "excusable neglect" in several places in the Federal Rules of Civil Procedure, including Rule 6(b), which Bankruptcy Rule 9006(b)(1) "was patterned after."  *Id.* at 391-92.

Moreover, the Court disagrees with Archithority's view of the impact of an extension on judicial proceedings.  This matter cannot move forward until Defendants comply with their obligations under the February 20 Order.  The Court also disagrees with Archithority's conclusory statement that Bricklayers will not be prejudiced by its proposed extension.  As discussed in Section II.D.1.a, Bricklayers is being deprived of even the first steps toward resolution of this matter, and the monetary award it is ultimately entitled to under the judgment, and has been for many months.

Finally, the Court rejects Archithority's reliance on *United States v. Ivens*, No. 3:12-CV-107-TAV-CCS, 2014 WL 5139327, at *3 (E.D. Tenn. Sept. 12, 2014).  (Dkt. 48 at 6-7.)  *Ivens*, which is not binding on this Court, is a single example of a case where a party was granted an extension even after missing deadlines and the filing of a motion for contempt.  *See generally* 2014 WL 5139327.  The Court notes that it appears that in *Ivens*, some progress may have been made while the motion for contempt was pending, as the *Ivens* court stated, "During [the six-month period since the filing of the motion for contempt], the history of this issue and Mr. Ivens's alleged productions and remaining non-compliance has evolved considerably."  *Id.* at *3.  As explained in detail above, Defendants' productions and non-compliance has evolved little (if at all) since Judge Davis issued the February 20 Order and Bricklayers filed the Motion for Contempt.  (Dkt. 27-1, Ex. Q at 18; Dkt. 36 ¶¶ 4-5; Dkt. 37 ¶ 3; Dkt. 44 ¶ 2.)  Further, the *Ivens* court denied the motion for contempt without prejudice "to allow re-filing of another motion for contempt."  2014 WL 5139327, at *3.  This hardly suggests that the *Ivens* court found the party's failure to comply with the court's order excusable.

43

For all these reasons, the Court concludes that the factors of prejudice to the non-moving party and the length of the delay weigh against a finding of excusable neglect and granting an extension.

### 2.    Movant's Good Faith

For the third factor, Archithority argues that it "has been acting in good faith," and "[i]n the time since the Court's Order, Archithority has not ignored its obligations, but has instead worked with opposing counsel and [the Third-Party Administrator]." (Dkt. 48 at 7.) Archithority also says that it has provided some of the documentation, but has been prevented from full compliance by circumstances, and again notes that it has hired counsel and an accountant. (*Id.*) Archithority further notes that it previously asked the Court to continue to the contempt hearing to October 12, 2020. (*Id.* (citing Dkt. 31).)

The Court has already addressed Archithority's good faith efforts, or lack thereof, in Section II.C.3. The same reasoning applies here. Over eight months have passed since the February 20 Order, and yet Archithority has only produced a few documents and hired professional assistance, which does not in itself bring Defendants any closer to compliance. The Court notes that once again Archithority is disingenuous in its characterization of events, stating that it has "not ignored its obligations," when in fact Defendants made no contact with Bricklayers until a month after the deadline for compliance had passed, Kotowski did not seem to uncover the still-undescribed accounting issues until at least late May (suggesting that she had not made much effort to collect documents until then), and Defendants did not contact Bricklayers' counsel for a month, when Bricklayers contacted them, or produce any documents after the hearing on

the Motion for Contempt (Dkt. 43 at 1 (citing Dkt. 44 ¶ 2)), at which this Court strongly advised Defendants to begin producing documents immediately.

Regarding Defendants' July 13, 2020 request to continue the contempt hearing to October 12, 2020 (Dkt. 30), it is not clear why Archithority believes that shows good faith. The July 13 request to continue the contempt hearing so Defendants could secure counsel and obtain documents—which sought a 90-day continuance of the hearing almost five months after the February 20 Order issued—hardly suggests good faith conduct by Defendants. The fact that Defendants did not secure counsel until almost two months after the July 13 request, have made no meaningful progress in providing documents (much less complying with the February 20 Order), and in fact are now seeking an extension until December 18, 2020 to comply with the February 20 Order further undermines any good faith argument. Further, the July 13 request sought a continuance of the hearing and provided no information about when, if ever, Defendants would actually comply with the February 20 Order. (*See* Dkts. 30, 31.)

As it did regarding Defendants' inability-to-comply argument regarding contempt, the Court concludes that Archithority has not shown good faith that supports a finding of excusable neglect.

### 3.    The Reason for Delay

The fourth and final factor—the reason for the delay—for finding excusable neglect is the "key factor in the analysis." *Albright ex re. Doe*, 926 F.3d at 951. Archithority cites Kotowski's relocation to Connecticut, several break-ins, her 20-month-old child, her car accident in 2018, her shingles diagnosis in November 2019, and her use

of Gabapentin as the reason for her delay.  (Dkt. 48 at 4.)  As an initial matter, the Court

cannot ignore the shifting nature of Defendants' excuses.  In her unsworn July 13

affidavit, Kotowski claimed that her **home** was broken into in **2018**.  (Dkt. 31 ¶ 4.)  She

did not identify any break-in (at her home or business) as the reason for missing business

records.  (*See generally* Dkts. 30, 31.)  On October 23, 2020, Archithority asserted for the

first time that some records are missing due to a November **2019** break-in at

Archithority's place of **business**.  (Dkt. 50 ¶ 4.)  Further, on July 13, Kotowski claimed

her relocation to Connecticut was caused by the 2018 break-in at her home (Dkt. 31 ¶ 4),

but on October 23, she claimed she relocated to take care of her child and diabetic mother

(Dkt. 50 ¶ 2).  Ultimately, the Court need not determine which of these representations

are true because, even accepting all of these facts as true, for the same reasons the Court

found these facts did not support an inability to comply (*see supra* Section II.C.3), they

do not explain the months of inactivity and delay and do not support a conclusion of

excusable neglect.

Archithority also relied on the COVID-19 pandemic in its Motion for Extension.

(Dkt. 48 at 4-5.)  Archithority relies on several cases discussing the delay caused by the

COVID-19 pandemic.  (Dkt. 48 at 5 (citing *Elsherif v. Clinic*, No. 18-CV-2998-DWF-

KMM, 2020 WL 1441959, at *1 (D. Minn. Mar. 24, 2020); *United States v. Aguirre-*

*Maldonado*, No. 20-CR-53 (NEB/TNL), 2020 WL 2029610, at *1 (D. Minn. Apr. 28,

2020); and *Spencer v. Brott*, No. 17-CV-5035 (DSD/TNL), 2020 WL 2466284, at *2 (D.

Minn. May 13, 2020)).)  These cases are unpersuasive because they involved depositions

and constraints on incarcerated persons in the spring of 2020, not whether a business

could access its own records for an almost nine-month period that began on February 20, 2020 and continues through today.  Further, other than Kotowski's single attempt to obtain records from a governmental agency in April 2020 (Dkt. 50 ¶ 4), Defendants have not identified a single specific way in which the pandemic prevented them from complying with the February 20 Order.  The pandemic does not support a finding of excusable neglect.

In addition to addressing the factors for finding excusable neglect, Archithority also claimed that it is not a sophisticated party and that its "lack of sophistication weighs in its favor."  (Dkt. 48 at 3-4 (citing *In re R.H. Macy & Co., Inc.*, 161 B.R. 355, 361 (Bankr. S.D.N.Y. 1993)).)  This case is not binding on this Court.  Moreover, while Archithority may not be the most sophisticated of parties, it is a business entity that has retained counsel at least twice in connection with this action (once in April 2020 and again in September 2020) and it is not clear that lack of sophistication played any role in Defendants' failure to comply with the February 20 Order.  (Defendants have not argued, for example, that they did not understand the February 20 Order or understand their obligation to comply.)  The Court concludes that any lack of sophistication does not support a finding of excusable neglect, particularly in the absence of a showing that Defendants were unable to comply.  *See In re R.H. Macy & Co.*, 161 B.R. at 362-63 ("As no Movant has demonstrated that his or her failure to timely file a proof of claim was due to any circumstances outside a Movant's control or that such failure was excusable in light of events within such Movant's control, this factor, notwithstanding the fact that each Movant is not a sophisticated creditor, weighs in the Debtors' favor.").

All of the factors weigh against extending Archithority's time for compliance with the February 20 Order. These circumstances do not constitute excusable neglect. The Court therefore recommends denial of the Motion for Extension under the Rule 6(b)(1)(B) standard.

**B.    Analysis Under Rule 60(b)(1)**

As noted above, Bricklayers argued that Rule 60(b)(1), not Rule 6(b)(1)(B) applies to the Motion for Extension. Rule 60(b) provides in relevant part: "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons . . . mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). "A motion under Rule 60(b) must be made within a reasonable time" and the context of excusable neglect, "no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1). "The term 'excusable neglect' in this context is generally 'understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence.'" *Noah v. Bond Cold Storage*, 408 F.3d 1043, 1045 (8th Cir. 2005). "To be excusable, however, the neglect must be accompanied by a showing of good faith and some reasonable basis for not complying with the rules." *Id.* (citing *Ivy v. Kimbrough*, 115 F.3d 550, 552 (8th Cir. 1997)). "Neither a mistake of law nor the failure to follow the clear dictates of a court rule constitutes excusable neglect." *Id.*

For Archithority to succeed under the Rule 60 standard, it must have brought its Motion for Extension "within a reasonable time." *See* Fed. R. Civ. P. 60(c)(1). Bricklayers argues that Archithority did not bring its motion within a reasonable time.

48

The Court questions whether Rule 60(b) applies because the February 20 Order did not enter judgment; rather, it provided that "the Court will order Judgment against the Defendant" after completion of the audit and briefing on the question of attorneys' fees and costs. (Dkt. 22 at 15-16, ¶ 6.) In any event, the Court concludes that Archithority cannot show excusable neglect under Rule 60(b)(1). For the reasons stated in Section II.C.3, Archithority has not shown any reasonable basis for not complying with the February 20 Order or that the February 20 Order was unclear. Rather, the record demonstrates that Defendants intentionally chose to delay (at best) or even chose to not comply, all the while making promises of compliance. The Court therefore also would recommend denial of the Motion for Extension under the Rule 60 standard.

## IV.    <u>RECOMMENDATION</u>

Based on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1.    Plaintiff Bricklayers and Allied Craftworkers Service Corporation's Motion for Finding of Civil Contempt (Dkt. 24) against Defendants Archithority United, L.L.C. and Elena F. Kotowski be **GRANTED**;

2.    Defendants Archithority United, L.L.C. and Elena F. Kotowski, jointly and severally, be held in contempt of this Court for having failed to obey the Court's February 20, 2020 Findings of Fact, Conclusions of Law and Order for Judgment (Dkt. 22);

3.    Defendants Archithority United, L.L.C. and Elena F. Kotowski, jointly and severally, be ordered to pay a fine of $100 per day until they have complied with the Court's February 20, 2020 Findings of Fact, Conclusions of Law and Order for Judgment (Dkt. 22);

4.    If Defendants Archithority United, L.L.C. and Elena F. Kotowski have not complied with the Court's February 20, 2020 Findings of Fact, Conclusions of Law and Order for Judgment (Dkt. 22) within

fourteen (14) days of an Order adopting this Report and Recommendation, a bench warrant be issued for the arrest of Elena F. Kotowski and Elena F. Kotowski be arrested immediately by the United States Marshal and detained until she purges the contempt by complying with the Court's February 20, 2020 Findings of Fact, Conclusions of Law and Order for Judgment (Dkt. 22);

5.    Plaintiff Bricklayers and Allied Craftworkers Service Corporation be ordered to file an affidavit addressing whether Defendants Archithority United, L.L.C. and Elena F. Kotowski have complied with the Court's February 20, 2020 Findings of Fact, Conclusions of Law and Order for Judgment (Dkt. 22) no later than seven (7) days after the conclusion of the 14-day period described in paragraph 4 above;

6.    If Plaintiff Bricklayers and Allied Craftworkers Service Corporation's affidavit does not indicate that Defendants Archithority United, L.L.C. and Elena F. Kotowski complied with the Court's February 20, 2020 Findings of Fact, Conclusions of Law and Order for Judgment (Dkt. 22) within fourteen (14) days of an Order adopting this Report and Recommendation, that a bench warrant be automatically issued for Elena F. Kotowski's arrest as set forth in paragraph 4 above;

7.    Defendants Archithority United, L.L.C. and Elena F. Kotowski, jointly and severally, be ordered to pay a compensatory financial sanction to Plaintiff Bricklayers and Allied Craftworkers Service Corporation, representing Plaintiff Bricklayers and Allied Craftworkers Service Corporation's reasonable attorneys' fees and costs incurred in seeking compliance with the Court's February 20, 2020 Findings of Fact, Conclusions of Law and Order for Judgment (Dkt. 22), including those incurred in connection with bringing the Motion for Finding of Civil Contempt (Dkt. 24), and Plaintiff Bricklayers and Allied Craftworkers Service Corporation's October 23 supplemental briefing;

8.    Plaintiff Bricklayers and Allied Craftworkers Service Corporation be ordered to submit an updated affidavit regarding its attorneys' fees and costs within seven (7) days of an Order adopting this Report and Recommendation, and that Defendants Archithority United, L.L.C. and Elena F. Kotowski be given seven (7) days to file any objections only as to the attorneys' fees and costs sought by Plaintiff Bricklayers and Allied Craftworkers Service Corporation; and

9.    Defendant Archithority United, L.L.C.'s Motion for Extension of
Time to Comply with the Court's February 20, 2020 Order (Dkt. 45)
be **DENIED**.


DATED: November 3, 2020              *s/Elizabeth Cowan Wright*
                                     ELIZABETH COWAN WRIGHT
                                     United States Magistrate Judge


## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgement of the
District Court and is therefore not appealable directly to the Eighth Circuit Court of
Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a
magistrate judge's proposed finding and recommendations within 14 days after being
served a copy" of the Report and Recommendation. A party may respond to those
objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All
objections and responses must comply with the word or line limits set forth in LR
72.2(c).